McFarland, J.,
delivered the opinion of the Court.
*346 This bill was filed for divorce and other relief.
The parties were married about the 8th of December, 1861. The complainant’s name was Davis. Her father and mother were dead, leaving complainant and her brother George Davis, to inherit their property. Complainant’s share of the estate was worth some $10,000, consisting of a tract of land, some slaves and other property. The slaves and other personal property were principally lost by the results of the war. In the earlier part of their married life we hear of no serious troubles, but toward the years 1864, 1865 and 1866, their intercourse was at. times unpleasant.
In July, 1866, the complainant and defendant joined in a deed conveying the land to one Whipple, who immediately reconveyed the land to the defendant, vesting the title in him. Some time before this, their only child then living, had died. On the 20th of November, 1866, the complainant filed her bill for divorce. Early in the year 1867 this bill was dismissed, and the parties came together again, and continued to live together until about the month of July, 1870, when they again separated, and this bill was filed about the 29th of November, 1870.
Relief is prayed for upon sec. 2449 of the Code, sub-secs. 1, 2 and 3.
Without entering into an analysis of the testimony, which is voluminous, the real truth of the case as near as we can gather from this record, is as follows: The complainant herself, though a woman of good character, is subject to seasons of nervous excitement, *347 and on such occasions exhibits peculiar symptoms of-petulance and irritability. The defendant is an exceedingly industrious man and devoted to his business. He has shown much capacity in carrying .on the farming business, having greatly improved and enhanced the value of the farm. Judging from his conduct, he was calculating, if not selfish in the prosecution of his plans.
On two occasions he used personal violence toward the complainant. Once in the year 1866, before the filing of the first bill, and again in July, 1870, about the time of the last separation. The complainant charges that the violence on these occasions was severe and wanton. The defendant admits that he did wrong, but says that it occurred under circumstances of great provocation, and the blows inflicted were very slight — that he merely slapped the' complainant with his open hand. How the real truth of this is, the proof does not satisfy us, but the burthen being upon the complainant, we think the proof fails to show that the violence was of that enormous and aggravated character charged in the bill. We are not to be understood however, as justifying the violence to any extent. We think the real truth here,, as in many unfortunate cases of this character, is that both parties are liable to serious blame — the complainant was petulant and irritable — this was aggravated by a want of proper forbearance upon the part of' the defendant, and possibly also by the fact that the defendant’s relatives, in unusual numbers, became inmates of the house. Passing over this part of the case, it appears *348 that soon after this difficulty, a number of the neighbors, men of character and. respectability, were called together at their house. These gentlemen were informed by the • parties, that they had both made up their minds that they could not longer live together, and they (the neighbors) were requested to fix a basis for a division of the property. This they did, reducing their conclusions to writing. .The substance of this was that they valued the land at $5,000, and decided that McAllister should keep the land and pay the complainant $2,500, in ten annual installments. The first, to be divided into three installments due in four, eight and twelve months; the other installments to bear ten per cent, interest. To secure this, the land was to be conveyed to a trustee, who 'was to collect the sums, and apply the interest (and principal if necessary) to the support of the complainant, and in the event she died, then the fund was to be kept for the use of the only child (at that time) of the parties — Charley Stout McAllister — born after the filing of the first bill.
This paper recites that in consideration of the execution by the defendant of his part of the agreement, the complainant agrees to release all claim to a support from the defendant’s estate. This paper was signed by the referees. Appended to this is an agreement, signed by the complainant and defendant, accepting its terms, with a further stipulation that the complainant was to release all claim to the defendant’s estate in the event of his death before proceedings for divorce were consummated. Both parties then joined *349 3a application for divorce, which was afterward abandoned.
Upon this the defendant assumed that he was the owner of the premises. When informed of the result, the complainant seemed greatly distressed — said she had no home or place to go to. The defendant said that she could not and should not live there. The complainant found a temporary home in the house of a neighbor — where she remained a short time — from thence she removed to another neighbor’s, and finally, by the assistance of friends, reached the residence of a relative in Missouri where she gave birth to a daughter •on the 13th of April, 1871. Upon leaving her home, the complainant was in very destitute circumstances, not even possessing sufficient clothing. One of the principal grounds of controversy between the parties was as to the custody of their child. The defendant at times kept the child out of the way so the complainant could not find him. After the separation, she at times visited her home to see the child. On one of these occasions she was told by the defendant if she oame upon the place again, he would put the child where she could not .see it. He gives as a reason for this, that he was afraid she ■would destroy the child, as she had evinced a purpose to take her own life and the child’s also. However, in his answer, he expresses a willingness that the complainant shall be permitted to see the child at some other place, and from this we are disposed to doubt his sincerity as to his reason for not wanting her to come upon the place.
*350 Shortly before this bill was filed, a friend informed the defendant of the delicate health of his wife, and urged him to take her back home. He replied that this was out of the question, that he could not and would not live with her any more. He was then asked why he did not comply with the terms of the separation, and furnish her with the means of support? To this, his reply in substance was, that he was so pressed with the claims of his work-hands and other debts, that he did not have the money, but that he would do so by the 1st of January. This conversation was reported to the complainant, and’ in a few days this bill was filed.
It appears, that although the complainant was in great need and entirely dependent upon charity, the defendant furnished her -no means whatever, until compelled to do so under the order of the court.
Without therefore determining whether under all the circumstances the defendant’s treatment of complainant, previous to the separation, was so cruel and inhuman as to require a divorce on that ground, we are of opinion that the defendant has abandoned the complainant, and turned her out of doors and refused and neglected to provide for her and this is materially aggravated by the fact that the house that he has arrogated to himself to control, and which he refuses to allow her to occupy or enjoy, is her own property, inherited from her father, while the defendant himself, previous to the marriage, owned but little property. Upon these facts, and assuming that they were equally at fault, it would certainly be very harsh *351 to deny the complainant a shelter in the- home that was hers by right. Assuming her faults of temper to be as bad as the defendant himself says they are, which at times according to his account, amounts to a disposition to insanity, it shows no excuse for abandoning her in her helpless condition. The award of the referees was a nullity, and besides furnished no excuse for the defendant’s conduct. His obligations, legally if not morally, to support and care for her, remained as before; she was still his wife.
For the defendant, it is argued that the court below erred in rejecting part of the record of the first case, offered by the defendant. The complainant read the bill in the first case, the defendant read his answer. These parts of the first' record were not objected to, the defendant offered depositions taken in the case, which were rejected. They are however, in the record and we have considered these depositions as part of the evidence. Part of the record having been read, the defendant was probably entitled to all.
The defendant offered himself as a witness in his own behalf to support his answer, and, in the language of the bill of exceptions “and in contradiction of certain witnesses on behalf of the complainant disclaiming any intention to state anything that in point of fact came to his knowledge on account of the relationship of husband, etc.”
It is argued that under our recent statutes, the parties in a divorce case are competent witnesses to the extent proposed in this case.
¥e are not aware - that this direct question has *352 been decided, nor do we think it fairly presented now. It is not shown what facts the defendant proposed to establish by his own testimony. We cannot see that it would be considered by us as important. Before we would, in a case like this, reverse the decree and send the entire cause back to be reheard for the purpose of admitting other testimony, the fact or facts proposed to be proven, should distinctly appear, so that we could affirmatively say that such fact or facts were admissible and material upon the hearing of the cause. This does not appear in this case, and we will not therefore decide as to the competency of the defendant as a witness.
Petitions were filed by the creditors of the defendant, claiming satisfaction out of the property. Their petitions were dismissed, and they have not appealed. We are of opinion that the question as to their rights is not before us. See Chunn v. Chunn, Meigs’ R.
One of the allegations of the bill is, that the defendant attempted to take the complainant’s life by poison. There is no sufficient evidence to sustain this charge. We deem it unneccessary to comment^ upon this part of the case.
We are of opinion that the complainant is entitled to a divorce upon the ground that the defendant has abandoned her, turned her out of doors, and neglected and refused to provide for her. This divorce may be from the bonds of matrimony or from bed or board, in the discretion of the court. This discretion we feel is a delicate trust. It is true, the parties have both strongly expressed their determination not *353 again to live together. We are of opinion that the terms of the separation should not preclude a reconciliation. The decree should not go further than the facts of the case require. Possibly the parties, for the interest of their children, if for no other reason, may forget their follies and return to their duties. We do not think the proof shows the defendant to be utterly wanting in good qualities.
As to the property, the question is: Shall we regard the land as the property of the defendant and assign to the complainant a part thereof in lieu of alimony, or shall we regard it as complainant’s land, and restore it to her in accordance with section 2471 of the Code. We think the latter course must prevail. Although the legal title be vested in defendant, yet, in a court of equity, as between the husband and wife, we must regard the latter as the real owner. We cannot sanction the means by which he obtained the title. We decide nothing as to creditors. The title to the land will be restored to the complainant. In one event the life estate of the defendant may be restored to him. He has been faithful in improving the estate. The personal property is to be regarded-as belonging to him.
The most embarrassing question we have had to consider, is in regard to the custody of the children. This is a right we would interfere with with the greatest delicacy and caution. We cannot foresee the probable course of future events sufficiently to enable us to form an opinion as how the interests of the children will best be promoted. The proof shows *354 that both parties are reasonably well suited or qualified to have the custody of children. Perhaps neither of them is without exception in this respect. The tender age of the children makes it probable that for the present, the complainant should have their custody. And under this decree she will take possession of the means to support and maintain them. But we cannot say that this will continue so. We are not prepared to say that the defendant’s character wholly disqualifies him from taking the care and custody of his children. We doubt not that he has affection for them that should be respected, and his rights regarded.
A decree will be entered granting a divorce from bed and board; the title to the land restored to the complainant, and she placed in possession thereof; and she will also be allowed a reasonable portion of household furniture, to be determined by the Chancellor.
The custody of the children will for the present be given to the complainant, but with full liberty to the defendant to visit them.
•The cause will remain upon the docket of the Chancery Court with power reserved by the Chancellor to make the divorce absolute from the bonds -of matrimony, in the event a reconciliation shall not take place within a reasonable time, or as may hereafter seem proper, reserving' also to the Chancellor the power to make such further order in regard to the custody of the children as may hereafter become proper. This, we think is authorized by a fair construction of sec. 2467 of Code.
The costs will be paid by the defendant.